IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SHEBRA LATANYA KINCAID, ) | Case No. 2:14-cv-3905-RMG-MGB |
| ) | |
| Claimant, ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| _____ ) | |

Claimant Shebra Kincaid, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on her application for a period of disability and disability benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, the administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision be **affirmed**, based on the following proposed findings of fact and conclusions of law:

I. **Relevant Statutory Law**

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The "claimant for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). For purposes of the statute, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations set forth a five-step sequential process that considers a claimant's age, education, and work experience in addition to [the claimant's] medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, "[t]he claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and persuasion through the fourth step. If the claimant reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that the claimant can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). In this case, the ALJ determined that the claimant was not disabled at the fifth step of the sequential process.

## II. Background

The relevant facts have been extensively set forth in the ALJ's decision, and need only be summarized here: Claimant was born August 29, 1968 (a "younger" person), communicates in English, is literate, completed high school and two years of technical college (with a certificate in business administration), has a driver's license, and is married with three minor children. (AR 23, 154-55, 168, 170). She has past relevant work experience as a customer care coordinator/administrative secretary ("sedentary, skilled" in 2005-2010), store associate/manager (2002-2005), and cashier ("light, semi-skilled" in 1996-98). (AR 36, 62, 197-204).

On August 9, 2010, she filed an application for DIB benefits, alleging disability as of April 19, 2010 due to depression, anxiety/panic attacks, short term memory loss, nerve issues, personality change, migraines, diabetes, and lower back/shoulder pain. (AR 154-55, 169). The

applications were denied initially and on reconsideration. (AR 98-102). Upon request, Administrative Law Judge Walter C. Herin, Jr. ("ALJ") held a hearing on January 4, 2013, at which the claimant (represented by counsel) and a vocational expert ("VE") testified. (AR 46-94, Hrg. Tr.). On May 3, 2013, the ALJ issued a decision, finding that the claimant was not disabled from the alleged onset date (April 19, 2010) through the date of decision. (AR 37). The Appeals Council denied review (AR 1-6). The ALJ's decision is the final decision of the Commissioner.

### III.  Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.* at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

**IV.   Discussion**

Claimant argues that 1) the ALJ should not have found her "less than fully credible" based on certain personal observations and based on the Claimant's reported activities of daily living, and 2) the ALJ allegedly did not assess all the relevant evidence in determining her RFC.

### A. Whether the ALJ's credibility findings are supported by substantial evidence

Claimant generally argues that the ALJ's credibility findings are not supported by substantial evidence. Review of the ALJ's decision, however, reflects that substantial evidence supports the ALJ's finding that claimant's allegations were less than fully credible.

The ALJ correctly cited Social Security Ruling 96–7p, which explains that if the ALJ does not find a claimant's statements to be fully credible, the ALJ must cite specific reasons based on the evidence. SSR 96–7p ("Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"), 1996 WL 374186 at *1-3); *and see, e.g., Dean v. Barnhart*, 421 F.Supp.2d 898, 906 (D.S.C. 2006) (discussing SSR 96-7p). Factors used to assess the credibility of an individual's subjective symptoms and allegations of pain may include: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; any medication taken to alleviate pain or symptoms; treatment and other measures used to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ is not required to state specific findings on each and every factor. *See, e.g., Heeman v. Colvin*, Case No. 2:13–3607–TMC-MGB, 2015 WL 5474679, *11 (D.S.C. Sept. 16, 2015); *Hutton v. Colvin*, 2015 WL 3757204, *38 (N.D.W.Va.).

The Commissioner points out that the ALJ articulated at least six reasons for finding the Claimant's allegations "less than fully credible." (AR 32-36). First, the ALJ found that the

treatment records did not support the degree of pain and limitation alleged by the Claimant. The ALJ observed that clinical examinations often yielded "unremarkable" findings which were inconsistent with the degree of severity of Claimant's subjective complaints (AR 26-27). With respect to many of the Claimant's physical complaints, the ALJ noted that treatment had "resolved the issue or minimized the effects of the conditions." (AR 24-28, 32). Claimant had a carpal tunnel procedure, cervical fusion, shoulder procedures (left/right), breast reduction, and abdominoplasty.[1] Claimant acknowledged at the hearing that her neck and shoulder symptoms had improved after surgery and that her carpal tunnel procedure was successful. (AR 71-73, "there's no numbness anymore"). The ALJ explained that the medical records documented various surgical procedures which had resolved or minimized the effects of the condition within a few months. AR 642, surgeon Dr. Frank Cuce, M.D. indicated 9 minute procedure for "right carpal tunnel release" was performed on June 9, 2011 and that evaluation "revealed no gross anomalies"). The ALJ also noted "many duplicate records…which tends to give a false impression of more frequent treatment for more severe conditions than actually exist." (AR 24). With respect to the Claimant's mental complaints, the ALJ noted that clinical examinations consistently revealed mild symptoms controlled by medication (AR 28-29, 350). After a thorough discussion of the medical evidence, the ALJ appropriately concluded that "the medical evidence does not support the severity alleged by the claimant." (AR 32, 35).

    Second, the ALJ observed that treating physicians had not imposed any permanent restrictions on her activities or indicated that she could not handle work activity. (AR 32-33). The ALJ pointed out that "the success of those procedures as well as her overall medical care can be

---

[1] Abdominoplasty is a cosmetic surgical procedure involving the removal of excess flesh from the abdomen, commonly referred to as a "tummy tuck." (AR 85-86 "I had him remove the fat from the back of my back and add some to my buttocks and remove some of the fat from my thighs.").

inferred by the fact that the progress notes showed no documented physician imposed permanent restrictions; furthermore none of her physicians have stated the claimant was disabled or otherwise unable to work." (AR 32). In fact, Claimant's treating neurologist Dr. Baker, provided an opinion during the relevant period indicating that Claimant had the functional capacity to perform work. (AR 33, 910-12).

Third, the ALJ observed that consulting state agency physicians (Drs. Perll and Heilpern) also reviewed the medical file and opined that Plaintiff retained the RFC to work. (AR 33-34). These two doctors, respectively, indicated that the Claimant could perform work at the light or sedentary level, with certain postural and manipulative limitations. (AR 415-21; 669-76). A third consultant, psychiatrist Dr. Robert Estock, M.D, considered the evidence of mental impairment and concluded that Claimant could perform work involving one to two step instructions with gradual and infrequent workplace changes, with social limitations. (AR 679). These opinions all indicated that Claimant was capable of working, thus undermining the Claimant's allegations of limitations of disabling severity. Tendency to exaggerate is a legitimate factor in determining credibility. *Kyle v. Secretary of HHS*, 449 F.2d 489, 490 (4th Cir. 1971) (affirming denial of benefits where claimant exaggerated symptoms); *Hutchinson v. Astrue*, 2012 WL 1267887, *8 (M.D.N.C.) ("the issue … is not whether Plaintiff's pain exists; it undoubtedly does and the ALJ so acknowledged…[the issue is whether the ALJ considered the record as a whole and properly determined] that the extent and limiting effects of that pain were not as great as [she] claimed").[2]

---

[2] In December 2009 (approximately four months after she filed for disability benefits), Claimant was in an auto collision in which her vehicle was rear-ended in a parking garage. The ALJ noted that only moderate vehicle damage was reported, airbags did not deploy, and that claimant was wearing her safety belt. (AR 24). Although claimant reported "pain" afterwards, clinical examination yielded normal results with no motor or sensory deficits, and she was discharged with a notation of "neck strain." Her own family practitioner subsequently examined her, with "unremarkable" results. Based on her subjective complaints, a CT scan of her head was taken, again with normal results. (AR 25). An MRI of her cervical spine showed only a small herniation at C6-7 no foraminal encroachment. Claimant alleges that she gets "panic attacks and anxiety attacks" from "the stress of the accident." (AR 68).

Fourth, the ALJ, observed (as one of many factors) that the Claimant received unemployment benefits in 2010-2011 after her alleged disability onset date (AR 35-36, 65-66, testifying that she received unemployment benefits from third quarter of 2010 through the second quarter of 2011). The Claimant represented that she was willing and able to work and that she was actively looking for work (AR 66-67), whereas she claimed in her disability application that she was unable to work during the same time frame. These representations are facially inconsistent. As the Commissioner points out, the ALJ correctly indicated that this fact is not determinative, but may appropriately be considered as one of many factors when determining credibility. (DE# 11 at 17, citing AR 36); *see e.g., Brannon v. Astrue*, Case No. 1:11-cv-1568-SVH, 2012 WL 3842572, *11 (D.S.C. Sept. 4, 2012); *Caler v. Colvin*, Case No. 1:14–cv–1565–RBH-SVH, 2015 WL 1862794 (D.S.C. April 23, 2015) ("it is appropriate for an ALJ to consider a claimant's receipt of unemployment compensation and the certifications that she made to a state agency to receive those benefits as one of many factors in assessing her credibility").

Fifth, the ALJ mentioned several of his own observations. (AR 34-35). For example, although the Claimant alleged she was limited to sitting for only one hour, the ALJ observed that the claimant "sat throughout the hearing without any noticeable discomfort." (AR 23, 36). The record reflects that the hearing commenced at 1:47 p.m. and concluded at 2:56 p.m. (AR 46-94).[3] The ALJ also noted that Claimant indicated she had her hair elaborately styled at a salon every week (which would also require her to sit for a significant length of time). (AR 36, 75 acknowledging "I go to the beauty shop every week to get my hair done, " that she would sit under the dryer for "about an hour," and that the stylist then took another 30 minutes to finish her hair).

---

[3] Claimant acknowledged that she sat for forty minutes while travelling by car to the hearing. (AR 60). She then sat over an hour at the hearing with no apparent discomfort.

Claimant also indicated she didn't like to be around people (AR 60), but the ALJ aptly noted that Claimant reported that she liked to spend time with family and friends, had her hair styled weekly at the beauty shop, that she had her fingernails intricately painted at a salon, and walked in the shopping mall for exercise, all of which suggest that she could in fact "be around people."[4] The ALJ could reasonably conclude that the Claimant's allegations to the contrary were exaggerated.

Sixth, the ALJ indicated that the Claimant was able to engage in a variety of activities of daily living, which further tended to undermine her allegations of limitations of disabling severity. (AR 35). For example, the Claimant reported driving every day, going for long drives, walking at the shopping mall for exercise, using the computer, making simple meals, going to the salon, watching movies and television, taking care of her two large dogs (i.e. letting them outside etc.), paying bills, and spending time with family and friends. (AR 57, 86, 184-86, 207-14, 233-42). She is able to take care of her own hygiene and manage her own funds.

The Commissioner points out that the Claimant challenges only two of the ALJ's stated reasons for finding Claimant less than fully credible: 5) certain personal observations by the ALJ, and 6) Claimant's activities of daily living.  (DE# 11 at 17, citing DE# 10 at 14-17). The Commissioner asserts that the other "four unchallenged bases satisfy the substantial evidence standard." (*Id*.) "Routinely, Courts have found harmless error where only one or a few reasons among many were improper, where the remaining bases constitute substantial evidence." *Johnston v. Colvin*, Case No. 9:13-cv-2098-BHH-BM, 2015 WL 893064, *3 (D.S.C. Mar. 3, 2015) (affirming Commissioner's decision and citing *Mickles v. Shalala*, 29 F.3d 918 (4th Cir. 1994)).

---

[4] Claimant testified that "I used to like to hang out with my girlfriends and stuff, and now that, you know, they, they're going to school or they're working and stuff, we don't get together like we used to." (AR 81). Her testimony indicates non- impairment reasons for not getting together.

Moreover, the Claimant's arguments regarding the two challenged reasons lack merit. With respect to the ALJ's observations, this Court has consistently held that "[i]t is permissible for the ALJ to consider, as one factor out of many, his observations at the hearing in the credibility analysis." *Chavis v. Colvin*, No. 6:13–cv-2914–MGL–KFM, 2015 WL 545368, *22 (D.S.C. Feb. 10, 2015); *Massey v. Astrue*, No. 3:10–cv-2943–TMC-JRM, 2012 WL 909617, *4 (D.S.C. Mar. 16, 2012) ("the ALJ may include these observations in his credibility determination"). Here, the ALJ's own observations were just a few of many factors considered as part of the credibility determination. See SSR 96–7p, 1996 WL 374186, *8 (ALJ may consider his own observations of claimant but may not accept or reject the claimant's complaints solely on the basis of such personal observations).

Claimant urges that certain personal observations were not appropriate. She contends that "she is unable to provide for many of her personal care needs" and that her weekly visits to the salon to maintain a "neat" appearance "strengthens her credibility instead of detracting from it." (DE# 10 at 16). Contrary to such argument, the ALJ could appropriately observe that Claimant engaged in activities that required her to sit for longer periods (while she claimed she only could sit for an hour). The ALJ also appropriately observed that although Claimant claimed that she "didn't like to be around people," she admittedly and routinely engaged in various activities where she was "around people." The ALJ had the opportunity to observe the claimant's demeanor, and his observations concerning her credibility are given great weight. *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). Claimant's alternative interpretation provides no basis for remand.

The Claimant also makes much of the ALJ's brief observation that the Claimant "had spent part of the hearing talking about her "aggressive pursuit of back child support…and her motor vehicle accident personal injury claims" and thus "presented as litigious." (AR 36). The Claimant

contends that this is "irrelevant and immaterial" and "demonstrates bias." (DE# 10 at 16). The Commissioner responds that the comment should not be interpreted in the manner urged by Claimant and that it does not demonstrate any sort of bias. (DE# 11 at 18). The record reflects that at the hearing, the ALJ observed that "I see references to several different lawsuits in … the notes." (AR 83). Claimant then testified that she had been pursuing five lawsuits: one for back child support, one for the motor vehicle accident in the parking garage, and "three where they just tapped my bumper." (AR 84). The term "litigious" is defined as "tending or likely to engage in lawsuits." See [www.miriam-webster.com/dictionary](www.miriam-webster.com/dictionary). Contrary to the Claimant's over-stated argument, the ALJ made a factual comment which provides no basis for remand. Moreover, even supposing *arguendo* that such lone comment was not proper, it would be a harmless error, as the unchallenged reasons provide substantial evidence to support the ALJ's credibility determination.

The Claimant also challenges the ALJ's credibility finding to the extent the ALJ relied on evidence indicating that Claimant was able to engage in a variety of activities. The Commissioner points out that the Claimant focuses only on the function reports completed by her and her husband, but that "the ALJ's analysis was not so limited." (DE# 11 at 19, citing DE# 10 at 16-17). The ALJ also discussed medical notes indicating that Claimant reported going on a road trip to Atlanta, riding a motorcycle in a funeral procession for a friend in a motorcycle club who had passed away (and Claimant reported no issues in engaging in such activity), and walking at the shopping mall for exercise. (AR 35, citing AR 506, 516, 684). The Commissioner points out that the ALJ also took note of the fact that Claimant's physicians did not instruct her to limit her daily activities. (AR 35). Contrary to Claimant's argument, this evidence all supports the ALJ's finding that her functional limitations were not as severe as alleged. *See Johnson v. Barnhart*, 434 F.3d 650, 658

(4th Cir. 2005) (claimant's daily activities were inconsistent with claim that she was unable to perform basic work abilities); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

It is the ALJ's duty to weigh all the evidence and make credibility determinations. *Hays*, 907 F.2d at 1456. The ALJ properly relied upon the record as a whole in assessing credibility. "It is the province of the [ALJ], and not the courts, to make credibility determinations." *Mickles*, 29 F.3d at 929. The ALJ appropriately considered the claimant's subjective claims and adequately explained the reasons for his credibility findings. The ALJ's credibility determination complied with Ruling 96–7p and is supported by substantial evidence.

B.  Whether the ALJ adequately assessed the Claimant's RFC

Next, the Claimant argues that "the ALJ has not assessed all the relevant evidence" in assessing the Claimant's RFC. (DE# 10 at 18).[5] The Claimant points to three pieces of evidence that she contends were not specifically mentioned in the ALJ's decision: 1) an initial neurocognitive assessment; 2) the fact that she was recovering from recent right shoulder rotator cuff surgery at the time of the hearing; and 3) a nerve conduction study/EMG which revealed a lesion of her ulnar nerve in her left elbow with symptoms of tingling in the arm. (AR 826, 914-916). Claimant seeks remand on such basis.

---

[5] The ALJ found "severe" impairments due to "cervical degenerative disc disease, status post C6-7 fusion; degenerative joint disease of the shoulders, status post bilateral arthroscopic surgery; low back pain secondary to lumbar degenerative disc disease; recurrent headaches; affective disorder; mood disorder; panic attack disorder." (AR 22-30, "rule out post-traumatic stress disorder" and "pain disorder"). The ALJ found that Claimant's impairments (both severe and non-severe), singly or in combination, did not meet any Listing. (AR 30, ¶ 4). The ALJ found that Claimant had the RFC to perform simple, routine, repetitive tasks in a low stress environment work at the sedentary level, except for work requiring lifting or carrying more than 10 pounds; lifting or carrying of 10 pounds more than occasionally; lifting or carrying 9 pounds or less more than frequently; and standing and/or walking for more than a total of 2 hours in an 8 hour workday; crawling, climbing ladders, ropes, or scaffolds; exposure to unprotected heights, vibration or dangerous machinery; concentrated exposure to humidity, wetness, and cold temperatures; ongoing interaction with the general public or close "team-type" interaction with co-workers; or more than occasional stooping, kneeling, balancing, twisting, crouching, climbing stairs or ramps, or overhead reaching with the upper extremities." (AR 31, ¶ 5.). Based on Claimant's age, education, RFC, the VE testified that Claimant could work as a surveillance monitor, machine tender, and addresser. (AR 37).

The Commissioner responds that the ALJ's RFC assessment is not undermined simply because the ALJ did not explicitly mention every piece of evidence in the extensive record. Although an ALJ must consider the evidence as a whole, the Fourth Circuit Court of Appeals has explained that there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *see also Jackson v. Astrue*, Case No. 8:08–2855–JFA–BHH, 2010 WL 500449, *10 (D.S.C. Feb.5, 2010) (the ALJ was "not required to provide a written evaluation of every piece of evidence"). Moreover, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Manigo v. Colvin*, Case No. 0:13–cv–3185–BHH-PJG, 2015 WL 74954, *5 (D.S.C. January 06, 2015) (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"). RFC is what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a). An individual is not required to be symptom-free to work. *See Hays*, 907 F.2d at 1458.

The Commissioner points out that the ALJ's decision specifically acknowledged that the Claimant complained of "memory loss" and then discussed the second neurocognitive assessment performed by her physician. (AR 29). The Commissioner points out that Dr. Baker – the treating neurologist who conducted the neurocognitive assessment in January 2013 – did not identify any "work-related activities" that would be affected by Plaintiff's impairment, (DE# 11 at 21, citing AR 910-12). The Commissioner indicates that Claimant's primary care physician and medical providers repeatedly concluded in clinical examinations that the Claimant had "no appreciable deficits" in terms of her memory (*Id.*, citing AR 717, 778, 923-924). When evaluating the Claimant's alleged mental impairment, the ALJ adequately considered the evidence as a whole, including the Claimant's allegation of "memory loss." In the RFC, the ALJ accounted for the

alleged symptoms by limiting Claimant to simple, routine, and repetitive tasks in a low stress environment (AR 31). Substantial evidence supports the ALJ's analysis with respect to Plaintiff's memory issues and the related RFC findings.

The Commissioner also asserts that the ALJ's RFC assessment adequately accommodated the Claimant's alleged issues with her shoulder. Although Claimant argues in her brief that she was wearing a sling on her right arm because she was recovering from recent right shoulder surgery at the time of the hearing, the Commissioner points out that the medical records indicate that the Claimant's recent rotator cuff surgery was actually on her left shoulder. (AR 901-07, indicating "left shoulder arthroscopy"). Although Claimant underwent this left shoulder procedure on December 11, 2012 (AR 901-03), no evidence suggested that she would not adequately recuperate in a reasonable time. (AR 906, follow-up visit the next day on Dec. 12, 2012, noting only "minimal swelling" and that Claimant was "comfortable … and neurovascularly intact"). At the hearing on January 4, 2013, Claimant testified that she had been undergoing physical therapy. (AR 77, indicating they had her lifting "a one-pound barbell"). The ALJ's decision specifically discussed this procedure on the left shoulder. (AR 27-28 noting that "Claimant underwent left shoulder arthroscopy" and "was to continue with occupational therapy").

Claimant had the burden to show that any impairments met the duration requirement, which the ALJ correctly cited and discussed. (AR 23). The Commissioner asserts that the treating surgeon's progress notes indicated that Claimant had done well after surgery, and that her physical abilities had steadily improved. In fact, Claimant acknowledges that "the only evidence contained in the record is that [she] would continue with occupational therapy … The record is unclear as [to] what residual and functional limitations she will experience…"  (DE# 10 at 18). The Commissioner correctly points out that the Claimant had the burden of proof and production at the

first four steps. (DE# 11 at 22, citing *Thomas v. Colvin*, Case No. 13-cv-1294-RMG, 2014 WL 2611720, *10 (D.S.C. June 11, 2014) (*citing Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995)). Plaintiff presented no evidence suggesting that she would not continue to improve and recover successfully in a reasonable amount of time.

Finally, contrary to Claimant's argument, the record reflects that the ALJ did not ignore or fail to discuss an EMG study showing a chronic left ulnar issue in the Claimant's left elbow. (AR 27, 798). On the contrary, the ALJ considered this evidence. The Commissioner points out that the ALJ explicitly referred to the EMG and left elbow when summarizing the impairments (DE# 11, citing AR 27) ("The following month [October 2012], electrodiagnostic studies of the left upper extremity w[ere] abnormal demonstrating a chronic left ulnar issue at the elbow"). The ALJ reasonably accommodated any resulting limitation in the RFC by limiting how much weight Claimant could lift and carry and by allowing for only occasional overhead reaching. (AR 31). The Commissioner asserts that the Claimant's issue with her left elbow did not warrant any restrictions beyond those included by the ALJ in the RFC. (AR 27-36).

In reviewing the Commissioner's final decision, the court does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996). Here, the ALJ assessed a comprehensive RFC that accounted for all of the Claimant's credibly established impairments.

## RECOMMENDATION

Accordingly, the Magistrate Judge **RECOMMENDS** that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

January 25, 2016  
Charleston, South Carolina

_____  
MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE